We'll next hear Corus Staal v. United States, 2009-1425. Corus Staal BV v. United States, 2009-1425. Good morning, Your Honor. My name is Dick Cunningham. I'm a step-town Johnson appearing for Corus Staal. I'd like to welcome Judge Guilford, and I'd particularly like to welcome the California with who brought with us. We've had a hard winter here. This appeal of a final determination in the fourth review of the hot roll carbon steel case turns, we submit, on a fundamental, I would say the most fundamental principle of American anti-dumping law. A fundamental principle of? Of American anti-dumping law, the United States anti-dumping statute. Under our system, we begin under section 1673 of the statute with two investigations to determine by the Commerce Department whether it's appropriate to issue a final affirmative or negative determination of sales at less than fair value by an exporter. That is, whether this is a dump that we have here. And then, not at issue here, a determination of injury by the International Trade Commission. Section 1673 is absolutely clear that no authority exists to impose anti-dumping duties unless there is, in effect, a final affirmative determination of dumping with respect to that exporter. What is striking about this case is that all parties agree that at the time the Commerce Department rendered its determination in the review here appealed, there was no anti-dumping, final affirmative anti-dumping determination of sales at less than fair value in effect. Commerce Department said that explicitly in the section 129 proceeding. United States Steel says that explicitly in its brief that the determination was in effect up until the final determination in the 129 proceeding when Commerce entered a new determination, of course, had not engaged in dumping. So what is the rule you would have us apply in terms of the applicability of the revocation order? This is not about the revocation order. And I want you to be careful not to be confused by the briefs of the other side. We do not argue that the revocation order issued in the 129 proceeding prevents the imposition of duties. The statute, section 129, says that implementation matters, including revocation orders, apply prospectively in the sense of, prospectively to, it's a special prospectivity rule, to imports entered after the date of that revocation order. So clearly you would lose under that analysis, right? Yes, but that's not what we're arguing. Okay. What we're arguing is that the fundamental grant, fundamental source of authority to impose duties, it's not the order, it's very explicit in the statute. It is the existence of a final affirmative determination of sales of less than fair value. And everybody acknowledges the time of this administrative review determination, there was no such determination in effect. Where we differ is as to what that means. The United States and the United States Steel would have you believe that a final affirmative determination of dumping is something that commerce can say it applies to this set of imports or that set of imports. That's not what it is. A final determination of dumping conveys authority to act. This Court has addressed that specifically in the Asco-Flores case. If there is no effective final determination of dumping, there can be no effective review. It is not an issue of what imports are covered by the review. It's not a question of what time period are covered by the review. It's a question of at-time concepts. Which place were you citing? The Asco? Asco-Flores. Oh, boy. Now you're going to get rid of my... It's 9-16, Federal 2nd, 1571. I thought that was the Asocion-Colombia. Okay, that's why I was confused. Asco-Flores, because we're all terrible at Spanish. Okay, but I think the government or the other side argues, and I think arguably persuasively, that that case is easily distinguishable from the case we had before it. I don't think so, Your Honor. Okay. What happened in Asco-Flores was that it's a little bit complicated, if you'll bear with me for just a moment. There was an initial determination of dumping and an issuance of an order with a margin in the original investigation. A review started in which some parties were selected for review. Others were not reviewed by the Congress Department. Were they not reviewed, their duty would be imposed on the basis of the original investigation margin, which otherwise wouldn't be a duty margin. The council, that is the organization for the Flores, sought an injunction against imposition of duties because they had appealed the original investigation determination, and they wanted the duties not imposed until they finished that appeal. The United States argued no exhaustion of remedies, the court disposed of that issue, and the United States took the position that you had to have, excuse me, the court then said that you cannot impose, you cannot have a review, which was then ongoing, if you didn't have an initial anti-dumping order. But in that case, that case dealt with the challenge to an original CIT order. That was not an instance where we were implementing a WTO ruling pursuant to Section 129. We don't have a WTO decision here either. We're asking you to apply the U.S. law. The WTO decision here was a decision which said that the United States had acted wrongly under WTO rules in computing by zeroing the dumping margins in the original investigation. Commerce and the USTR then go through a two-step process. The first step is to make a determination whose specific purpose is to bring the action of the United States, that is, the computation in the original review, into consistency with the WTO order. That was done here. Everybody agrees it was done properly. Nobody is challenged that here or in the appeal of the Section 129. They applied the new ruling, that is, the no zeroing, to a set of imports, that is, the imports in the original investigation. They reached a determination. It would make no sense to say that that determination can't apply to past entries because then you couldn't have done what they did, which is to apply it to the entries in the original investigation. It is the no application to past entries provision. Appears not. But, counsel, didn't our previous appeal dispose of this issue that you're referring to right now because it said it will not apply that this new, it was a quote, the new policy did not apply to any other type of proceeding, including administrative reviews. That's at 1374 and 502. Then went on to state that it has no effect on the final determination, of course, is fourth administrative review. Well, that's the same administrative review we're appealing to. You're referring to the Section 123 determination of Congress's new policy. That's not what's at issue here. What is at issue here is what was done with respect to this specific proceeding, and therefore it's governed by 129 and not by that 123 language that you're talking about there. Well, part of the language of the footnote is the revocation of an anti-dumping order, however, does not automatically invalidate anti-dumping duties previously assessed for periods during which the order was in effect. And we do not argue that the revocation of the order invalidates anti-dumping duties here. We take the same position on that that the Congress Department and U.S. Steel take, which is that when you revoke the order, which is an implementation process subject to subsection C of the statute, where the limitation language comes in, that order applies, the revocation only applies to future entries. The determination that's made as to the original investigation is not so limited. Nothing in the statute says it is limited. It is itself the basis of the authority, not totally independent of the order or the revocation. If you do not, as this Court has explicitly ruled, if you do not have an effective determination, a final affirmative determination of sales of less than fair value at the time you take action, you can't take action to oppose duties, and that was the situation here. And their construction of the statute is, it's a strange construction, because what it would do is it would say that the Congress, without having ever mentioned Section 1673, without having ever mentioned the final affirmative determination of dumping, somehow created an exception to the requirement that you have to have a final affirmative determination of dumping to authorize action. And that particularly is strange in a statute that is the URA, the statute under which Section 129 is enacted, which says nothing in the statute will amend or modify any law unless it explicitly says it's doing so. Nothing here amends Section 1673 or modifies this application. And Congress has said to this Court, the United States has said to this Court, to the USTO, in the 129 decision and in the Fourth View decision, that the status of, I'm sorry. Counsel, isn't that true only as long as the duty hasn't been applied, liquidated, unliquidated? I'm sorry, it isn't. Okay, so I guess what's confusing. We have duties that are not liquidated, and the question is can Congress take action to liquidate them without the authority of Section 1673, and our position is they can't. Now, so would the new anti-dumping duty order have to apply to both past dumping and future dumping and past dumping for you to prevail? You mean the new situation where they don't have authority? Right, would I have to sign that? No, because this is not retrospective in the sense that the United States seeks to tag us with. We are not saying that the original final termination of dumping was somehow made invalid ab initio. We say exactly what they say. It was in effect until the time Commerce issued the new final negative determination of dumping and not afterwards. That's what we say, that's what USTO says, that's what the Commerce Department says. That means there's no authority to act, and that's our case. I'll save two and a quarter minutes. Yes, sir. Thank you. So I understand you're dividing the time on your side and you're taking 10 minutes. That's correct, Your Honor. May it please the Court, I'd like to start just first with a correction to a statement made by Corris' counsel. This case is identical to the Court's previous decision in what we call Corris 2, which was in 2007. I think what Mr. Cunningham said is that that case involved a different Commerce determination, but it involved the exact same Commerce determination, which is this Section 129 determination. And what happened was that the Section 129 determination came out at the end of April, beginning of May, and there was all kinds of activity trying to figure out what it meant. The parties argued that Corris' decision shortly thereafter, right around the time that Commerce issued its final results of this fourth administrative review. And so we talked about how it was clear from Commerce's fourth administrative review that Commerce had no intention of applying its Section 129 determination retroactively for a variety of reasons, not the least of which is that the statute requires that the determination be applied to entries that enter on or after the date on which the USTR orders implementation. Now I think what I also heard Corris' counsel say, and certainly it's in Corris' brief as well, is that the determination that Commerce makes is standalone, or as they called it in their brief, self-executing. Thank you. Self-executing. And that's absolutely not the case. The statute is quite clear that there are two events that have to happen. First, Commerce is directed by the USTR to issue a new determination, or it may or may not be. If it is directed to issue a new determination, then the USTR, after consultation, makes the decision whether to direct implementation of that in whole or in part. So, of course, the USTR could decide not to direct implementation, which means that that determination has no effect whatsoever. So let's say that the USTR had not directed implementation here. All we would have is a Commerce determination, which doesn't do what Mr. Cunningham says it does. All it does is recalculate the margin from the investigation to come into compliance with the WTO decision. It made no finding that there was no dumping during the original investigation. It does something very, very limited. And, in fact, what Section 129 does is something very, very limited. I wouldn't call it an exception to Section 1673. It operates on its own plane, where when Commerce and the rest of the political branches respond to an adverse WTO report, there are very specific and limited steps that have to happen in order to come into compliance, and that's exactly what Commerce has done here. Let me ask you about the statutory references. There's discussion of 1675, and then there's other discussion of 3538. Which controls here? What's the interplay between the two? Well, I don't think there is any interplay. 1673 requires two things. 1675. Sorry. The two things are an affirmative dumping determination by Commerce and an injury determination by the ITC. Those are the two things that you need in order to get to an anti-dumping duty order that can then become the basis for the anti-dumping duties and all of the subsequent administrative reviews. There are many situations, as this Court noted in the 2007 Corus decision, where that original order can be revoked. Now, when it gets revoked, it doesn't get revoked ab initio. It gets revoked midway through the process, and Commerce gets to decide what the effective date of that revocation is going to be. And oftentimes, the effective date of that revocation is prospective. So the way that 3538 works, which we refer to in shorthand as Section 129, the way that that statute works is sort of outside the realm of 1673. It works solely for the purpose of implementing an adverse WTO decision, and it's what we refer to as entry-based. It doesn't care what's going on before the agency. It doesn't care whether Commerce is in the middle of a proceeding. It doesn't care, really, whether an issue is before the domestic court system. So your whole argument, as I understand it, is what matters is when the merchandise entered. That's the key critical inquiry as to whether the pre-policy change standard of zeroing applied or the post-policy non-zeroing. And so it doesn't matter, in the government's view, if the anti-dumping duty determination was made after the policy change, if it's applying to merchandise that came over before. That's correct. Okay. Wait. I'm just trying to understand your argument. That's correct. Do you consider that to be fair, or is that relevant? I think it's perfectly fair. I mean, the anti-dumping system is, in the first instance, as the Court has mentioned time and again, a retrospective system. It's always looking backwards to what's happened in the previous years. So to the extent that, in this case, the entries that came in during the fourth administrative review might have come in before really has no bearing on what should happen in the future. And that makes particular sense because Section 129 is all about coming into the compliance with a WTO decision. The WTO doesn't work like our system. The WTO is all about prospective compliance. The WTO, when a party loses, doesn't actually ask the party to go back and fix something that happened before. It asks the country to comply in the future. And that's why the statute is written the way that it is. And the SAA, then, tries to reconcile the way— I thought your answer might focus on prospective versus retrospective, and prospective is always fairer. In this case, it happens to result in more harm to this particular appellant. But in many cases, the prospective change could be beneficial to the appellant, and he would prefer not to have it apply retrospectively. I would have thought maybe that would have been your response. Is that a position the government supports or adopts? I'm not sure I would go so far as to say that. I think that in terms of—and I think what Your Honor is getting at is different kinds of retroactivity analyses. In terms of how a statute should be applied and whether it should apply retroactively, the first place that you look is to the statutory language itself. And if the statutory language tells you that it shouldn't apply retroactively, then it doesn't apply retroactively. So I'm not sure that fairness really matters when Congress itself has told us exactly how this should apply. And this is, as the Court articulated, this is entry-based. The statute is not concerned with where commerce is in the process or what stage the administrative review is, and that is exactly why this case is identical to the situation in the 2007 Coras decision. And distinguishable from the situation in the other case that Mr. Cunningham cited. He cited this other case, which he and I call a different name. Oh, okay, the Ahsoka—I'm going to call it a third name. In the Ahsoka Flores case, yes, I mean, we don't disagree with Mr. Cunningham's articulation of the facts or the procedure in that case. The case simply didn't involve the implementation of an adverse WTO report. It didn't involve this very specialized statute that has very limited application. So I don't think it has any bearing. We don't disagree with the notion that, as a general matter, you need to have an affirmative determination of dumping. And in that case, that's certainly what the Court decided, but that has absolutely no impact on this situation. If the Court doesn't have any further questions for these reasons, we respectfully request that the Court affirm the Court of International Trade's judgment. Thank you. May it please the Court. My name is Ellen Schneider. I'm with the law firm of Skadden Arts, and I'm here this afternoon on behalf of United States Steel Corporation. The question before you today is, did the Department of Commerce have statutory authority to impose empty dumping duties on courses imports for the period of the Fourth Administrative Review, or whether that authority has somehow been destroyed because long after the imports entered the United States, Commerce implemented a Section 129 determination. Well, I propose that the answer is clear. Commerce has the authority, and we don't have to do any guesswork about this to get that answer, because it is spelled out in the statute. This is Section 129C1, which states that a determination implemented under Section 129 will apply only with respect to entries that enter the United States on or after the date the USTR directs implementation. So, as we've all said today, the application of a Section 129 implementation is prospective. Here, the USTR directed implementation on April 23, 2007. The entries that we're discussing for the Fourth Administrative Review entered the United States in 2004 and 2005. Therefore, these entries predate the implementation. They're not affected at all by the Section 129 determination, and under the law, they remain subject to empty dumping duties. This is the whole case. It could not be any simpler or any more straightforward than that. Now, all of the authority that bears on this issue confirms this straightforward conclusion. So I'll refer you to the SAA, which is the Statement of Administrative Action, which Congress and the Court have expressly recognized to be the authoritative statement of the interpretation and application. of this statute, and that says, without question, a Section 129 determination shall have prospective effect only. So that means that it will only affect entries that enter the United States on or after the date that the USTR directs implementation. And the SAA also states that unliquidated entries that enter the United States prior to the date of implementation still have potential empty dumping liability. So as you yourselves have noted, this Court, and it's true that all the courts that have considered this issue, have recognized that, yes, an implementation under Section 129 has prospective effect and does not in any way affect or negate Congress's authority to impose empty dumping duties on entries that predate the date that the USTR directs implementation. So the law could not be any clearer. Now, having said all that, what basis could there possibly be for Coase's argument? Well, the answer is there is no basis. The essence of Coase's argument is this. Since Congress recalculated Coase's dumping margin in the Section 129 determination and found that its margin was zero in the Section 129 determination, this factual finding automatically invalidates all subsequent action by Congress, even with respect to entries that predate the Section 129 determination. But Coase's premise is wrong. It cannot be squared with the statute. In fact, this is precisely what the statutory scheme specifically seeks to avoid. The statute is clear that a Section 129 determination is going to be limited in its effect. But Appellate Judge Cunningham stated that the original determination was not final. You seem to be making an argument from that. The original determination was not only – the original determination in the 129? Or the original determination of dumping with respect to – The original determination of dumping was my understanding. The original determination of dumping was not only final. It was upheld by the Court of International Trade and upheld by this Court, and cert was denied by the Supreme Court. So that is in effect and clear. Coase engaged in dumping under U.S. law. What happened in the 129 is that Commerce made a new calculation simply to bring that determination not inconsistent with international law, with the WTO. And that's what we're talking about. And the scheme that Congress put into place is to make sure that that implementation will be limited and will not affect any entries that predate the date of that implementation. Those entries – I think we have your argument. Thank you so much, Robert. I think I have about six and three-quarter minutes, something like that, by my count. I reserved four. I have 243 left. No, that's the total is 243 because you used part of your – you used part of the four you had reserved. So this is what was remaining. Let me begin by saying it really makes no sense to say that Commerce did not make a negative determination of dumping. A negative determination of dumping is computing the dumping margin that comes out de minimis or zero, and that's exactly what they did. So don't be confused by that. Let me read you from the final results of the Section 129 determination. A determination of sales at less than fair value in a case like this where they reach that zero margin valid under U.S. law remains in place up until the date on which USTR directs the Department to implement the new determination. Same statement is made by USTR. Nobody says that there was a final affirmative determination of dumping in effect at this time. What is done here is a confusion between determinations and implementation. Section 129 in subsection C, where the limitation to future injuries occurs, deals with implementation, issuance of orders, revocation of orders. Those must be prospective. No such requirement is imposed on determinations themselves made under subsection B. That is where this determination was made. The question is not what it applies to. The question is what is the legal significance of that determination. You'll notice that the reference was made to when an order has been revoked. The prior entries remain subject to potential anti-dumping liability. We agree. Congress is to do what it did up to a point in this case. It is to conduct a review as to those determinations, as to those prior entries. What Congress did not do was consider the most important question to ask in that review, which is what is the significance of the fact that there is not today a final affirmative determination of dumping in effect? The answer to that is... What do you mean by there is not a final determination in effect? Because they determined the course was in fact not dumping in the original investigation period. As I say, that's the fundamental thing in the statute. We don't impose our procedures or our duties on people who weren't dumpers. Now, is that a retroactive determination? Not in the sense of it makes the original determination invalid. As Commerce and USTR say, that determination remained valid up until the time of the new 129 determination. But after that, it was not valid. And one last point. This is not a question of whether to impose the WTO rule on this review. The WTO rule was no zeroing. It has nothing to do with our appeal of this review. Our appeal of this review is they have no authority to impose duties on any basis on any imports. And zeroing is not an issue. Thank you. Case is submitted. Thank counsel for their argument.